UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 25-60360-CIV-DIMITROULEAS/HUNT

ROSARIO ROSADO

        Plaintiff,

vs.

HOSPITALITY SOFTNET INC., and
GARY RICHARDS

        Defendants.
_____/

## REPORT AND RECOMMENDATIONS

THIS CAUSE is before this Court on Defendants' Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Complaint. ECF No. 13. The Honorable William P. Dimitrouleas, United States District Judge, referred this Motion to the undersigned for disposition. ECF No. 14; *see also* 28 U.S.C. § 636(b); S.D. Fla. Mag. R. 1. Having carefully reviewed the Motion, the Response, and Reply thereto, the entire record, and applicable law, and being otherwise fully advised in the premises,[1] the undersigned respectfully RECOMMENDS that Defendants' Motion be GRANTED for the reasons outlined below.

### BACKGROUND

This case concerns a defamation claim brought by a former employee against Defendants. Defendants now argue this should go to arbitration due to an enforceable arbitration clause in Plaintiff's contract. Plaintiff responds the arbitration clause does not

---

[1] The undersigned notes that the Parties, having been contacted by Chambers about a hearing, agreed to have the Motion decided on the papers.

apply because, according to her, she was not employed by the firms with which she had signed the agreement. The issue is now ripe for resolution.

## LEGAL STANDARD

"The F[ederal] A[rbitration] A[ct] provides that an agreement to arbitrate is 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Greene v. Subcontracting Concepts, L.L.C.*, No. 13 CIV. 01500 AJN, 2014 WL 1087999, at *2 (S.D.N.Y. Mar. 19, 2014) (quoting 9 U.S.C. § 2). "Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Cullen v. Shutterfly Lifetouch, LLC*, No. 20-CV-06040-BLF, 2021 WL 2000247, at *5 (N.D. Cal. May 19, 2021) (quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)). "If the response is affirmative on both counts, then the [Federal Arbitration Act] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

## ANALYSIS

According to the Complaint, Plaintiff was a property manager at Taplin Falls Ltd. ("Taplin Falls") for 20 years. In January of 2024, Defendant Hospitality Softnet and its agent, Defendant Gary Richards, conducted a third-party assessment of Taplin Falls. Plaintiff claims Richards accused Plaintiff of embezzlement, resulting in her termination on January 29, 2024. Plaintiff now brings a two-count claim of defamation against Defendants.

2

Defendants assert that Plaintiff was, at all relevant times, employed by Falls Management Services Company ("Falls Management"), rather than Taplin Falls. In roughly March 2011, Falls Management began using Strategic Outsourcing, Inc. ("SOI") to provide payroll and other related administrative services. Under this regime, Plaintiff signed an arbitration agreement stating the following:

> I and SOI mutually agree that any legal dispute involving SOI, Company or any benefit plan, insurer, employee, officer, or director of SOI or Company arising from or relating to my employment, wages, lease employee benefits, application for employment, or termination from employment will be resolved exclusively through binding arbitration before a neutral arbitrator heard in the capital or largest city of the state in which I work or another mutually agreed location. . . .

Falls Management also engaged TriNet HR III, Inc ("TriNet"). Under TriNet, Plaintiff accepted the following Dispute Resolution Protocol ("DRP") under TriNet's Terms and Conditions Agreement:

> Subject to the limitations in subsection (b), this DRP covers any dispute arising out of or relating to your co-employment with TriNet, including your TriNet co-employer, and/or arising out of or relating to your employment with your company, as well as any dispute with an employee, officer, or director of TriNet or of a TriNet customer (all of whom, in addition to TriNet customers, are intended to be beneficiaries of this DRP) ("covered dispute"). The Federal Arbitration Act applies to this DRP.  Also, any applicable internal procedures for resolving disputes (e.g., procedures in the employee handbook for complaining about, and addressing complaints about, misconduct), as well as the option of mediation, will continue to apply with the goal being to resolve disputes before they are arbitrated.  This DRP will survive termination of the employment relationship.  With only the exceptions described below, arbitration will replace going before a court for a judge or jury trial, and even in the situations described below, NO JURY TRIAL WILL BE PERMITTED, unless applicable law does not allow enforcement of a pre-dispute jury trial waiver in the particular circumstances presented.
> ***
> Subject to the exceptions provided herein, this DRP is the full and complete

agreement for resolution of covered disputes between you and TriNet (and its employees, officer and agents) and between you and your company (and its employees, officer and agents).

***

By acknowledging below, I confirm that I have read and understand the contents of this TCA (including, but not limited to, the DRP), that I have the responsibility to read and familiarize myself with the employee handbook and additional policies for my company and that I agree to abide by the terms and conditions set forth above in this TCA, including but not limited to the DRP, as well as the policies and procedures set forth in the employee handbook and additional policies.

Defendants now argue that under the express and unambiguous terms of these agreements, Plaintiff's claims are subject to arbitration.

Plaintiff counters that she was not employed by any of the entities with which she had arbitration agreements in place at the time of the incident in question.  Instead, she alleges that Taplin Falls was her only employer.  In support, she submits IRS Form W-2 showing that Taplin Falls was her employer during the relevant period, and notes that no W-2 was issued to Rosada from any employer mentioned in the arbitration agreements.[2] She argues that there is simply no arbitration agreement with Taplin Falls, and that Defendants have failed to explain how they are contractually or operationally related to Taplin Falls.

The relevant inquiry, then, is the identity of Plaintiff's employer.  Against Plaintiff's W-2, Defendants submit the affidavit of Ailyn Gonzalez, Administrative Director at Falls Management Services, Co.  In her Declaration, Gonzalez attests that "Falls Management employs and pays the payroll of the employees who work at Falls of Pembroke, an

---

[2] The undersigned also notes that Plaintiff filed a parallel case against Taplin Falls, *Rosario Rosado v. Taplin Falls, Ltd.*, Case No. 25-60365-CIV-DIMITROULEAS, and bases several arguments on Taplin Falls' defenses in that case.  That case has since settled.

4

apartment complex property in Pembroke Pines, Broward County, Florida owned by Taplin Falls Ltd. d/b/a Falls of Pembroke.  Plaintiff Rosario Rosado was one of those employees." ECF No. 13 at *17.  Gonzalez also attested to and provided documentation from Plaintiff's personnel files confirming that her employer was "Falls Management Services Company," or otherwise indicating Plaintiff's employment was with Falls Management Services Company at the time the arbitration agreements were signed.  Given Plaintiff's own admission that she had worked at Taplin Falls for 20 years, despite what her W-2 might say, her employment at the relevant time was with Falls Management and therefore was covered under the arbitration agreements.

Plaintiff's argument that Defendants have failed to show a contractual or operational connection to Taplin Falls therefore makes little sense, legally or practically.  Legally, Plaintiff was a Falls Management employee who worked at the Taplin Falls property, and there is no dispute about the relationship between Defendants and Falls Management.  Practically, in her Complaint, Plaintiff alleges explicitly that "Taplin Falls Ltd. engaged Hospitality Softnet, Inc., a third-party consulting firm, to assess its operations," and that "Gary Richards, an agent of Hospitality Softnet, Inc., conducted this assessment in his capacity as a consultant."  ECF No. 1 at *2.  She also alleges that Richards' "allegations were made in a workplace meeting, attended by multiple employees and witnesses, as well as numerous employees from Falls of Pembroke and Marina Bay, where the accusations were widely discussed."  *Id*. at *3.  Clearly, Defendants were engaged by Plaintiff's employer to do the work they carried out.

As to whether Defendants can benefit from the arbitration clause, Plaintiff repeatedly cites *Lubin v. Starbucks Corp*, 122 F.4th 1314 (11th Cir. 2024) for the

5

proposition that independent contractors or third-party consultants could not benefit from an arbitration agreement merely because they received a benefit from the agreement. As Defendant correctly points out, *Lubin* concerned a situation in which the defendants were attempting to enforce an arbitration agreement that the plaintiff's wife, not plaintiff, had signed as a condition of her employment.

*Lubin* is inapposite to this situation, where an entity engaged by the employer is attempting to enforce an agreement directly between the employer and employee. "A non-party to a contract containing an arbitration clause may compel parties to the contract to arbitrate if it is determined the non-party is a third-party beneficiary to the contract." *Mims v. Glob. Credit & Collection Corp.*, 803 F. Supp. 2d 1349, 1354 (S.D. Fla. 2011). "[A] third party may claim a contract benefit only if the parties to the contract clearly express an intention to confer a benefit on the third party." *Id.* (citation omitted). "A non-party is the specifically intended beneficiary only if the contract clearly expresses an intent to primarily and directly benefit the third party or a class of persons to which that party belongs." *Id.* (internal quotation and citation omitted) (cleaned up).

The TriNet agreement explicitly covers the employers' "employees, officers and agents" as well as "any dispute … arising out of or relating to your employment with your company." By Plaintiff's own admissions, Defendants were hired to assess her employer's operations, and those assessments directly led to the employment dispute underlying the instant case. The undersigned finds that Defendants, acting as consultants for Plaintiff's employer, are under these circumstances covered under the agreement.

Plaintiff further argues that even if she is bound to the terms of the arbitration agreement, the circumstances of the case do not fall under that agreement.  This too makes little sense.  This entire case arises out of an allegedly defamatory statement made during an evaluation by a third-party consulting firm conducted on behalf of Plaintiff's employer.  Plaintiff was fired from her job because of the evaluation.  The undersigned sees little difficulty finding that the incident in question arose out of her employment.

In consideration of the above analysis, the undersigned finds that Defendants were beneficiaries of an arbitration agreement between Plaintiff and her employer, and the agreement covers the dispute.  Defendants' Motion should therefore be granted.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends Defendants' Motion to Compel Arbitration and Stay Proceedings, ECF No. 13, be GRANTED, and this Case be dismissed or stayed pending the outcome of arbitration.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2018); see *Thomas v. Arn*, 474 U.S. 140 (1985).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 3rd day of September 2025.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Honorable William P. Dimitrouleas
All Counsel of Record